UNITED AIR LINES, Inc., a corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 53 C 1866.

United States District Court
N. D. Illinois, E. D.

Feb. 9, 1955.

**654**

Mayer, Friedlich, Spiess, Tierney, Brown & Platt, by Harry Thom and Hugo J. Melvoin, Chicago, Ill., for plaintiff.

Kurt W. Melchior, Sp. Asst. to Atty. Gen., Donald S. Lowitz, Asst. U. S. Dist. Atty., Chicago, Ill., for U. S.

BARNES, Chief Judge.

### Findings of Fact

1. Plaintiff is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business in the County of Cook, State of Illinois, within the Chicago District of Internal Revenue and within the Northern Judicial District, Eastern Division, of the State of Illinois.

2. From and after September 1, 1947, until his term of office expired on April 30, 1952, John T. Jarecki was the duly appointed, confirmed and acting Collector of Internal Revenue for the United States of America for the First Collection District of Illinois, and since April 30, 1952, he has not held such office or been or acted as such Collector.

3. On February 6, 1947, plaintiff entered into a Credit Agreement, a true and correct copy of which is attached to the Stipulation of Facts filed herein and is hereby incorporated by reference and made a part these findings of fact. On July 1, 1948, plaintiff borrowed $28,000,-000 from 35 banks pursuant to said Credit Agreement, the loan from each of said banks being evidenced by a single promissory note described as a "Term Loan Note." Each of said notes was identical (except as to the name of the bank and the principal sum shown therein). Each of the Term Loan Notes given by plaintiff to said 35 banks pursuant to said Credit Agreement dated February 6, 1947 was printed on plain, white paper and did not bear the corporate seal, and was without coupons and not in registered form. With the exception of blanks provided in each said Term Loan Note for the typewritten insertion of the name of the bank to whose order the Note was payable and the principal amount, the terms of each said Term Loan Note were as follows:

"Term Loan Note

"$————————          July 1, 1948

"United Air Lines, Inc., a corporation organized and existing under the laws of the State of Delaware (hereinafter called the "Company") For Value Received, hereby promises to pay to the order of the principal sum of          Dollars ($    ) in twenty (20) equal consecutive quarter-annual installments, the first of which shall mature on October 1, 1948, together with interest from date hereof on all amounts remaining unpaid thereon from time to time at the rate of two per cent (2%) per annum, payable quarterly on the first day of each of the months of January, April, July and October of each year, both principal and interest to be payable at the office of The National City Bank of New York, 55 Wall Street, New York 15, New York.

"This promissory note is one of the Term Loan Notes referred to in the Credit Agreement dated as of the 6th day of February, 1947, between the Company, certain Banks referred to therein, and The National City Bank of New York, as Agent, and is subject to the provisions and entitled to the benefits thereof.

United Air Lines, Inc.

By ————————————————

(Authorized Officers)"

4. No documentary stamp tax was paid upon execution and delivery of any

of said Term Loan Notes. Upon examination and report by an Internal Revenue Agent, it was asserted that a liability of $30,800 had been incurred by plaintiff under Section 1801 of the Internal Revenue Code of 1939, 26 U.S.C. § 1801, by reason of the execution and delivery of said Term Loan Notes on the theory that said Term Loan Notes were debentures; and assessment of tax was recommended and made on that theory. Upon Notice and Demand for Tax, payment of $30,800 pursuant to said assessment was made by plaintiff to the said John T. Jarecki as Collector of Internal Revenue for the United States of America for the First Collection District of Illinois on April 13, 1950.

5. On June 26, 1952, plaintiff duly filed its claim for refund of the tax paid with Ernest J. Sauber, Director of Internal Revenue, Chicago, Illinois, a true and correct copy of which is attached to the Complaint filed herein and is hereby incorporated by reference and made a part of these findings of fact. On July 23, 1953, notice of disallowance of said claim for refund was sent by the Commissioner of Internal Revenue to plaintiff by registered mail and was received by plaintiff.

6. Plaintiff commenced this action on September 3, 1953 for the purpose of obtaining refund of the documentary stamp tax so paid. This action was commenced under Section 1346 of the United States Code, 28 U.S.C. § 1346, Section 3772 of the Internal Revenue Code of 1939, 26 U.S.C. § 3772, and all other laws of the United States in that behalf.

7. No part of said $30,800 has been refunded or repaid to plaintiff or credited to any tax deficiency of plaintiff.

8. Plaintiff is the sole owner of the claim herein presented and the only person interested therein, and no assignment or transfer of its claim or any part thereof or any interest therein has been made. No other suit or process by plaintiff or any assignee of plaintiff is pending against any other person or against the defendant for or in respect to plaintiff's claim.

9. In 1946, plaintiff desired to obtain additional funds for use in its commercial air transport business. At meetings of the Board of Directors of plaintiff on July 8 and July 23, 1946, recommendations were made by Mr. John W. Newey, Vice President—Finance, that plaintiff (1) raise $9,500,000 through the sale of plaintiff's then authorized but unissued Preferred Stock; (2) raise $25,000,000 through the sale of 20-year Debentures; and (3) arrange for a stand-by loan agreement with plaintiff's banks of account providing for bank credit of $10,-000,000 to be available at any time during the next two years. Plaintiff intended to use bank credit only as a residual source of funds and anticipated that in the event plaintiff earned as much in 1947 and 1948 as it had earned in 1944 and 1945 the need for such bank credit would not materialize. During the second half of 1946, the air transport industry suffered serious financial reverses. Plaintiff was informed by its investment bankers, that in their opinion only $12,-000,000 of 20-year Debentures could be sold. In December 1946, plaintiff began preparations to obtain bank credit in the amount of $28,000,000.

10. Because of plaintiff's desire to strengthen its public relations, plaintiff attempted to secure said bank credit from a large number of banks operating in communities located along the air transportation system served by plaintiff. Discussions relating to the securing of said bank credit were had by the said John Newey and representatives of the National City Bank of New York, which bank had been the principal depository of plaintiff since the time of plaintiff's incorporation, and which bank became agent for the other lending banks participating in said Credit Agreement dated February 6, 1947. The question of federal documentary stamp taxes was not raised during the course of any of such discussions. The selection and

(with one exception) the solicitation of each of the 35 banks participating in said Credit Agreement was made by plaintiff. For many years prior to the time said Credit Agreement and loans thereunder were made, plaintiff had been a customer of most of said 35 lending banks as shown by the following table:

| Name | Date |
|---|---|
| The National City Bank of New York | 1931 |
| Continental Illinois National Bank and Trust Company of Chicago | 1931 |
| Chemical Bank & Trust Company | 1945 |
| Security-First National Bank of Los Angeles | 1934 |
| The Chase National Bank of The City of New York | January 29, 1947 |
| Wells Fargo Bank & Union Trust Co. | 1931 |
| Mellon National Bank and Trust Company | November 1, 1946 |
| The First National Bank of Boston | 1940 |
| The First National Bank of Chicago | 1935 |
| Brown Brothers Harriman & Co. | 1935 |
| Harris Trust and Savings Bank | 1943 |
| The Northern Trust Company | 1936 |
| American Trust Company | 1945 |
| California Bank | 1945 |
| Citizens National Trust & Savings Bank of Los Angeles | 1945 |
| Crocker First National Bank of San Francisco | 1940 |
| First National Bank of Salt Lake City | 1940 |
| First Wisconsin National Bank of Milwaukee | January 20, 1947 |
| The Anglo California National Bank of San Francisco | 1942 |
| The Cleveland Trust Company | 1934 |
| The First National Bank of Portland | 1945 |
| The Manufacturers National Bank of Detroit | 1945 |
| The National City Bank of Cleveland | 1945 |
| Hamilton National Bank of Washington, D. C. | 1943 |
| Hartford National Bank and Trust Company | 1945 |
| Peoples National Bank of Washington in Seattle | 1945 |
| The Farmers and Merchants National Bank of Los Angeles | 1941 |
| The First National Bank of Denver | 1945 |
| The National Bank of Commerce of Seattle | 1944 |
| The Omaha National Bank | 1935 |
| The Pacific National Bank of Seattle | 1935 |
| The United States National Bank of Portland (Oregon) | 1935 |
| The United States National Bank of Denver | 1945 |
| First Bank and Trust Company of South Bend | 1943 |
| Oakland Bank of Commerce | 1942 |

11. Because plaintiff was uncertain as to the amount of bank credit it would need and as to the time when such need would arise, said Credit Agreement dated February 6, 1947 provided credit in the amount of $1,000,000 or in multiples thereof, when, as and if plaintiff required such credit during the period from February 6, 1947 to July 1, 1948. Plaintiff's borrowing during said period was evidenced by a single promissory note given to each of said 35 lending banks described as a "Revolving Credit Note," a copy of which is set forth as "Exhibit A" on p. 14 of said Credit

Agreement dated February 6, 1947. Said Credit Agreement further provided that on July 1, 1948, any loans made to plaintiff pursuant to said Credit Agreement during the period February 6, 1947 to July 1, 1948, would become evidenced by Term Loan Notes. During the period February 6, 1947 to July 1, 1948, plaintiff borrowed the entire $28,000,000 and issued its Revolving Credit Notes therefor. Plaintiff paid no federal documentary stamp tax thereon and no attempt was made by the Commissioner of Internal Revenue to impose such a tax.

12. On July 1, 1948, plaintiff gave each of said 35 lending banks a single promissory note, described as a Term Loan Note, reference to which has been made in Paragraph 3 of these findings of fact. Each of said 35 lending banks participating in the Credit Agreement dated February 6, 1947 is a commercial bank and not an investment bank. Each of said banks maintains a loan department and a department for the handling of investment securities. The activities of the loan department of each said bank are separate and distinct from the activities of the department handling its investment securities. Each of said banks handled its loan to plaintiff through the loan department of the bank as a bank term loan.

13. In an accounting sense, an airplane is a fixed or capital asset. At the same time utilization of aircraft is the basic source of plaintiff's revenues; the product sold by plaintiff consists of airplane seat-miles. In that sense, plaintiff's airplanes are its inventory. To the extent the proceeds of said $28,000,000 bank credit were used by plaintiff for the purchase of new aircraft, such credit was used to meet plaintiff's inventory needs.

14. In the commercial and investment banking world, the term "debentures" is used to designate those evidences of indebtedness designed in such a manner as to promote marketability. In the money market a debenture is designed to be bought and sold by investors who have no relation with the issuing corporation. For the purpose of promoting the marketability of debentures, such instruments are generally engraved on heavy, tinted paper or parchment and bear the corporate seal; generally provide for an indenture and for a trustee and an independent paying agent; are generally in coupon or registered form; and are frequently bought and sold at a price other than the stated face value. Where such an instrument is issued in large denominations, it is generally provided that the holder may, at his option, require the issuer to exchange said debentures for debentures of smaller, more marketable, denominations. The maturity of such instruments is rarely less than ten years from the date of issuance; and such instruments generally contain provisions imposing a penalty or premium in the event of their redemption prior to the stated time of maturity. The restrictive provisions contained in a debenture indenture are designed to protect an anonymous holder of such an instrument for the entire life of the debenture.

15. In commercial banking practice, before an unsecured loan is made, the borrower is usually required to meet certain requirements designed to protect the lending bank against credit risks. Generally, such requirements are not reduced to writing in the case of loans having maturities of less than one year, but they are nevertheless an integral part of the lending transaction. In general, the same requirements must be satisfied when such loans are renewed, thereby placing the lending bank in a position to protect itself against deteriorating credit by insisting upon payment or reduction in the amount of loan. In commercial banking practice, loans having a maturity of more than one year are generally known as term loans. In the case of term loans, it is the practice of commercial banks to incorporate provisions in the note or lending agreement substantially the same as the credit requirements it would insist upon in considering the granting of a loan having a maturity of less than one year. Bank Term Loan Notes are created for the purpose of evidencing the indebtedness

# 658

of the borrower to the lending bank and are not intended to be bought or sold by the lending bank. The provisions of said Credit Agreement dated February 6, 1947, to which each of said Term Loan Notes was made subject, are substantially the same as those credit requirements a commercial lending bank would insist upon in considering the granting of a loan having a maturity of less than one year.

16. In the commercial and investment banking world and among bank examiners, said Term Loan Notes delivered to said 35 lending banks pursuant to said Credit Agreement dated February 6, 1947, are not marketable; are known as promissory notes; and are not known as bonds or debentures or certificates of indebtedness or corporate or investment securities.

17. Said Term Loan Notes delivered to said 35 lending banks pursuant to said Credit Agreement dated February 6, 1947 are promissory notes. They are not bonds or debentures or certificates of indebtedness or corporate or investment securities.

## Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter of the action.

2. The Term Loan Notes delivered by the plaintiff to the 35 lending banks, on which documentary stamp taxes were assessed and paid, were promissory notes and were not bonds, debentures, certificates of indebtedness, or any other type of instrument within the meaning of and subject to tax under Section 1801 of the Internal Revenue Code of 1939, 26 U.S.C. § 1801, and are not subject to stamp tax under that section or any other section of the Internal Revenue Code.

3. The assessment and collection of $30,800 stamp taxes by defendant on said Term Loan Notes was illegal and erroneous.

4. Plaintiff is entitled to judgment against defendant for $30,800, together with interest thereon from April 13, 1950 and costs as provided by law.